UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID BRILL,<br><br>      Plaintiff,<br><br>    v.<br><br>OFC. MADISYN EINFALT #477, OFC. JEREMY BANKS #472, OFC ROBERT CONSTABLE #442, JOHN DOE POLICE OFFICER #1, JOHN DOE POLICE OFFICER #2, JOHN DOE POLICE OFFICER #3, WIND CREEK BETHLEHEM, LLC, WIND CREEK REALTY, LLC AND JOHN DOE, INC.<br><br>      Defendants. | CIVIL ACTION<br><br>No. 5:24-cv-00644<br><br><br>JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(6) BY
DEFENDANT, WIND CREEK BETHLEHEM, LLC**

  Defendant, Wind Creek Bethlehem, LLC (hereinafter, "Moving Defendants"), by and through their undersigned counsel, hereby moves for a dismissal of certain causes of action of Plaintiff's Complaint [ECF No. 1], pursuant to Fed.R.Civ.P. 12(b)(6).

**I. INTRODUCTION**

  This civil action was commenced on February 13, 2024 in this Court asserting claims sounding in Assault and Battery and Negligence against Moving

Defendant[1], and a variety of claims against Defendants Ofc. Madisyn Einfalt #477, Ofc. Jeremy Banks #472, Ofc. Robert Constable #442, John Doe Police Officer #1, John Doe Police Officer #2, John Doe Police Officer #3 (collectively the "City of Bethlehem Police Defendants"), and Wind Creek Realty, LLC[2].  See ECF No. 1. On March 4, 2024, Moving Defendant, through the undersigned Counsel, filed a Motion for the Extension of Time to File a Motion to Dismiss.  See ECF No. 7. On March 5, 2024, the Honorable John M. Gallagher entered an Order granting Moving Defendant's Motion and providing until April 8, 2024 to file a Motion to Dismiss.

II.     **STATEMENT OF THE CASE**

On February 13, 2022, Plaintiff and his adult son visited Moving Defendants property. ECF No. 1, ¶ 11.  Thereafter, Plaintiff's son "became intoxicated and was told to leave the casino floor", at which point the Plaintiff (who was implicitly with his son and observed his behavior) advised his son to go up to the room they were staying in. Id. at ¶ 12.  In fact, Plaintiff's son's actions and conduct was captured on video, including Plaintiff's interactions with law enforcement giving rise to the claims here.  Indeed, Plaintiff's own claims are based, in whole or in part, upon the

---

[1] Importantly, by stipulation of Counsel filed of record on March 21, 2024 [ECF No. 22] former Defendants, Wind Creek Bethlehem, Wind Creek Bethlehem Retail, LLC and John Doe #4 were dismissed, without prejudice.
[2] By virtue of the stipulation of Counsel filed of record on March 21, 2024 [ECF No. 22] the undersigned confirmed that Wind Creek Realty, LLC has nothing to do with the subject property, its employees, or the day-to-day operations.

contents of the undisputedly authentic video footage that captured Plaintiff's son's actions/conduct on February 13, 2022, Plaintiff's own interactions with law enforcement, and the events giving rise to the subject lawsuit. See ECF No. 1 ¶¶ 3 - 8, and 46.[3]

As the video footage reveals, Plaintiff's son is escorted off of the gaming floor by Moving Defendant's security personnel, at which point he engaged in lewd and threatening gestures, including forming his hand into the shape of a gun and pointing it at Moving Defendant's security personnel. See Exhibit "A," attached hereto.[4] Over the course of the ensuing 16 minutes, Plaintiff's son, despite being ordered by his father to return to his room due to his behavior, continued to wander the halls of Moving Defendant's property. See Exhibit "A."[5]

Approximately 16 minutes after he had been escorted off of the gaming floor by Moving Defendant's security, Plaintiff's son returned in an attempt to regain entry to the gaming floor. Id.[6] He was advised that he was not permitted to reenter. Id.

At this point the Bethlehem Police Department had already been summoned by Moving Defendant's (hereinafter "BPD") security department, and by the time

---

[3] These paragraphs are still images of the video footage relied upon by Plaintiff. A copy of the relevant and undisputedly authentic video footage is attached as Exhibit "A," for the Court's review and consideration.
[4] File title "POI Exiting Casino Floor at Market Entrance" – 20:02:12.
[5] File title "POI Exiting Casino Floor at Market Entrance" – 20:02:15 – 20:18:21.
[6] File title "POI Exiting Casino Floor at Market Entrance" – 20:18:30.

Plaintiff located his son at an elevator, BPD had already arrived on property and shortly thereafter made contact with Plaintiff and his son. Id.[7] As a result of Plaintiff's son's intoxication, nonsensical behavior, and threatening mannerisms, it was determined that he would be placed under arrest. Id. The video footage demonstrates that Plaintiff was standing between a BPD officer and his son as the officer approached to place Plaintiff's son under arrest. Id.[8] As this is occurring, Plaintiff's son had already begun to place his hands behind him in acknowledgement that he was going to be arrested. Id. Despite the presence and location of the BPD officer, and their attempts to place Plaintiff's son under arrest, he remains is a position preventing the BPD officer from securing his son. Id.[9] At the same time, Plaintiff reaches out in the direction of the officer moving to restrain and secure his son, and remains in a position whereby he presented an obstruction to BPD's efforts to take his son into custody. Id.

As a result, the officer attempting to secure Plaintiff's son uses force to achieve separation between Plaintiff and the arrest of his son. Id.[10] Another uniformed officer assists to forcefully remove Plaintiff from the close proximity he had been to the officer effectuating the arrest. Id. Plaintiff is then seen on video

---

[7] File Title "BPD Contact with POIs" – 20:26:38.
[8] File Title "BPD Contact with POIs" – 20:28:22.
[9] File Title "BPD Contact with POIs" – 20:28:24.
[10] File Title "BPD Contact with POIs" – 20:28:25.

resisting the BPD's officer's attempt to restrain and control the now agitated Plaintiff. Id.[11]

It was at this point that Moving Defendant's security officer can be seen coming from a position of observation in order to assist the BPD officer in restraining and controlling the agitated Plaintiff. Id. In an effort to subdue Plaintiff, Moving Defendant's security officer assists by taking Plaintiff's right arm. Id. Shortly thereafter, both male BPD officers with the assistance of Moving Defendant's security officer take Plaintiff to the ground where he is subdued until restraints can be applied. Id.[12] The image of the still resisting Plaintiff can be seen in the reflection from the elevator in the video footage. Id.[13] Thereafter, Plaintiff is arrested and charged with disorderly conduct. See the Pa. Unified Judicial System's Criminal Docket attached as Exhibit "B." On August 29, 2023 Plaintiff entered a guilty plea to one (1) count of Disorderly Conduct for the creation of hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor (18 Pa. C.S. § 5503(a)(4)). See Exhibit "B."

Plaintiff asserts claims of Assault and Battery (Count II) and Negligence (Count III), along with a request for punitive damages. Plaintiff asserts a number of garden variety conclusory negligence claims. Plaintiff has failed to allege a

---

[11] File Title "BPD Contact with POIs" – 20:28:30.
[12] File Title "BPD Contact with POIs" – 20:28:35.
[13] File Title "BPD Contact with POIs" – 20:28:36 – 20:28:53.

single fact that supports the myriad of conclusory allegations of negligence. Further, Plaintiff's claims for punitive damages are unwarranted in light of the undisputable video evidence.

### III. QUESTIONS PRESENTED

**A. DOES PLAINTIFF'S NEGLIGENCE CLAIM FAIL AS A MATTER OF LAW?**

**SUGGESTED ANSWER: YES.**

**B. HAS PLAINTIFF FAILED TO STATE A VIABLE CLAIM FOR PUNITIVE DAMAGES?**

**SUGGESTED ANSWER: YES.**

### III. STANDARD OF REVIEW

In order to survive a motion to dismiss, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Instead, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. Additionally, a plaintiff is required to show "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (*citing* Twombly, 550 U.S. at 556).

To determine the sufficiency of a complaint under Twombly and Iqbal, this Court must take the following three steps:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted).

The Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Public Employees' Retirement System v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), (*citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Similarly, the Court need not accept legal conclusions set forth as factual allegations. *Twombly*, 550 U.S. at 555 (*citing* Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and **undisputedly authentic documents if the complainant's claims are based upon these documents**. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993) (emphasis added).

The Court does not have to accept every allegation of a Plaintiff's Complaint as true. The Court need not credit "bold assertions" or "legal conclusions" in a Complaint when deciding a Motion to Dismiss. Burlington Coat Factory SEC Litigation, 114 F.3d 1410, 1429-30 (3d. Cir. 1997).

To determine the sufficiency of a Complaint, the Court must take the following three steps:

> "First the Court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'"

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d. Cir. 2011) [*cert. denied*, 566 U.S. 921 (2012)] (*quoting* Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d. Cir. 2010).

As set forth more fully below, there are no factual allegations that can support the claim that Moving Defendant acted negligently or in such a manner so as to warrant the imposition of punitive damages.

## IV. LEGAL ARGUMENT

### A. PLAINTIFF HAS FAILED TO PROPERLY ALLEGE A NEGLIGENCE CLAIM

In order to state a claim for negligence under Pennsylvania law, a plaintiff must show: (1) the defendant owed the plaintiff a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. Martinez v. United States, 682 F. App'x 139, 141 (3d Cir. 2017) *citing* Pittsburgh Nat'l Bank v. Perr, 637 A.2d 334, 336 (Pa. Super. 1994). "Generally, there is no duty to control the acts of a third party unless the 'defendant stands in some relationship with either the person whose conduct needs to be controlled or in a relationship with the intended victim of the conduct' ... A special relationship is limited to the relationships described in Sections 316-319 of the Restatement (Second) of Torts." Brisbine v. Outside in Sch. of Experiential Educ., Inc., 799 A.2d 89, 93 (Pa. Super. 2002).

An employer may be liable "for harm resulting from [its employee's] conduct if [it] is negligent or reckless' ... in the supervision of the activity." Doe v. Liberatore, 478 F. Supp. 2d 742, 760 (M.D. Pa. 2007) (citations omitted). In order to prove a *prima facie* case for state-law negligence based on a failure to train theory, a plaintiff must show that the defendant: (1) had a duty to train its employees; (2) breached that duty; and (3) the breach of that duty caused the plaintiff's harm. Oldham v. Pa. State Univ., No. 4:20-CV-02364, 2022 U.S. Dist. LEXIS 87272, at *58 (M.D. Pa. May 13, 2022).

To support a negligent supervision claim under Pennsylvania law, a plaintiff must show that his injury resulted from: "(1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment; (2) that is committed on the employer's premises; (3) when the employer knows or has reason to know of the necessity and ability to control the employee." Belmont v. MB Inv. Partners, 708 F.3d 470, 487-88 (3d Cir. 2013) *citing* Dempsey v. Walso Bureau, Inc., 431 Pa. 562, 246 A.2d 418, 420 (Pa. 1968)).

With regard to Count III of the Complaint Plaintiff has made numerous allegations of how Moving Defendant should have trained its employees differently.  However, many of these allegations have no relationship to this case.  For example, Plaintiff alleges Moving Defendant "failed to warn person lawfully upon the premises of the dangerous conditions existing thereon" but there are no allegations of any dangerous condition of the premises contained anywhere in the Complaint.

Other suggested areas of alleged security failures are completely unsupported.  Plaintiff alleges, for example, that Moving Defendant "fail[ed] to have an adequate number of trained, qualified security employees on duty," but asserts no facts to establish that more or less security would have avoided the incident complained of.  Plaintiff's suggestion that Moving Defendant had a duty to train in each of these areas and breached that duty is conclusory. There are also no

allegations that would suggest Moving Defendant knew of the need for training in each of the suggested areas or of the need to supervise its employees in such respects.

Additionally, Plaintiff's negligence claim fails because Plaintiff has failed to show that his rights were violated. As a result, there is no causal connection between any alleged breach of duty by Moving Defendant and any harm to Plaintiff. Greenberg v. Caesars Entm't Corp., No. 14-4796, 2016 U.S. Dist. LEXIS 36410, at *35-36 (E.D. Pa. Mar. 21, 2016) (finding that the complaint provided no factual allegations to support claims for negligence and negligent supervision under Pennsylvania law, and given probable cause to arrest the plaintiff, there was no evidence of breach or of any actual loss or damages resulted from such a breach).

Similarly, Plaintiff's failure to supervise claims fail, since Moving Defendant must have failed to prevent any intentional harm by an employee acting *outside* the scope of his employment. Id. However, the stipulation entered into by and between Counsel for the Plaintiff and the undersigned makes clear that Moving Defendant's security personnel were acting **within** the course and scope of employment at all times. See ECF No. 22. Accordingly, such claims are properly dismissed, with prejudice.

Indeed, this Honorable Court has dismissed similar unsupported negligence claims against Moving Defendant in the past. In Garcia v. Wind Creek, *et al.*,

EDPA No. 5:22-cv-00292, Judge Joseph F. Leeson, Jr. dismissed all claims, including those couched in negligence, against Moving Defendant.  Therein, Judge Leeson determined that "[i]n the absence of a sufficiently pled violation causing harm/injury to Garcia, leave to amend would be futile" and the negligence allegations (along with the entire complaint against Moving Defendant) was dismissed, with prejudice.  See a courtesy copy of Judge Leeson's opinion attached as Exhibit "C."

Instantly, Plaintiff's Complaint is devoid of any factual allegations sufficient to properly support the myriad of conclusory allegations of negligence asserted.  Compare the absence of any factual support for the negligence allegations in the Complaint with the undisputedly authentic video footage and it is clear that Plaintiff cannot make out upon which relief can be granted for negligence as to Moving Defendant.

    **B.**    **PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES FAIL AS A MATTER OF LAW**

Pennsylvania has adopted the principals of the Restatement (Second) of Torts §908 as the law on punitive damages.  See Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1277 (3d Cir. 1979).  The inclusion of the terms "reckless", "outrageous conduct", and "grossly negligent" can provide a basis for punitive damages.  Section 908(2) of the Restatement states in pertinent part:

12

"Punitive damages may be awarded for conduct that is outrageous because of the defendant's evil motive or his reckless indifference to the rights of others." Restatement (Second) of Torts §908 (1977).

Pennsylvania has adopted the rule of punitive damages as set forth in section 908 of the Restatement (Second) of Torts and the comments thereto. <u>Feld v. Merriam</u>, 485 A.2d 742 (Pa. 1984). Section 908 of the Restatement (Second) of Torts provides, in part:

> (1) Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future.
>
> (2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others . . .

Restatement (Second) of Torts, § 908. <u>See also</u> <u>Martin v. Johns-Manville Corp.</u>, 494 A.2d 1088, 1096-97 (Pa. 1985) (Punitive damages may be awarded only for conduct that is especially egregious or outrageous); <u>Chambers v. Montgomery</u>, 192 A.2d 355 (Pa. 1963); <u>Schecter v. Watkins</u>, 577 A.2d 585, 595 (Pa. Super. 1990) (The conduct must evince the defendant's evil motive or reckless indifference to the rights of others.).

Under Pennsylvania law, in order for claims for punitive damages to proceed, the pleading must allege specific conduct by each party that was

13

outrageous in nature and that demonstrates intentional, willful, wanton, or reckless behavior. SHV Coal, 587 A.2d 702 (Pa. 1991).

Moreover, it is well-settled that punitive damages may not be awarded for misconduct which constitutes ordinary negligence such as inadvertence, mistake, or errors of judgment. Martin v. Johns-Manville Co., 494 A.2d 1088 (Pa. 1985). In fact, even gross negligence is insufficient to impose punitive damages. Feingold v. SEPTA, 517 A.2d 1270 (Pa. 1986).

Plaintiff offers nothing in the way of facts to support the conclusion that Moving Defendant engaged in conduct so egregious so as to warrant the imposition of punitive damages. Rather, the undisputed video evidence paints a picture to the contrary and completely undermines the entitlement to a claim for such category of damages.

Notwithstanding the results or injury to the Plaintiff, the actions and conduct of the Moving Defendant arose out of the assistance with law enforcement performing their governmental duties. Such conduct does not arise to the level requiring the imposition of punitive damages.

Accordingly, Plaintiff's references to recklessness and claims for punitive damages should be dismissed.

### V. CONCLUSION

For the reasons set forth above, Count III and all references to recklessness and/or punitive damages of the Moving Defendant should be dismissed, with prejudice.

Respectfully submitted,

**Dated: April 8, 2024**    **POST & SCHELL, P.C.**

By: _____
IAN T. BAXTER, ESQUIRE
ATTY ID No.: 314981
Tower 6, Suite 200
600 Hamilton Street
Allentown, PA 18101
(610) 774 - 0317
ibaxter@postschell.com

Attorneys for Defendant
Wind Creek Bethlehem, LLC